ASH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Gurpreet Singh,

Petitioner,

v.

Unknown Party, *et al.*,

Respondents.

No. CV-26-01221-PHX-JJT (MTM)

**ORDER**

Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) challenging his immigration detention. The Court ordered Respondents to show cause why the Petition should not be granted. (Doc. 6.) This matter is now fully briefed. Considering mandatory detention of petitioners who have aged out of the Trafficking Victims Protection Reauthorization Act ("TVPRA") is statutorily impermissible, and as the Fifth Amendment Due Process Clause entitled Petitioner to a pre-deprivation hearing, the Court shall grant the Petition and order Petitioner's immediate release from Department of Homeland Security ("DHS") custody.

**I.      BACKGROUND.**

Petitioner is a native and citizen of India who entered the United States on November 20, 2017, as an Unaccompanied Child ("UAC"). (Doc. 1 at 2); (Doc. 8 at 1.) Petitioner was issued a Notice to Appear ("NTA") on that date, charging him with a violation of Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) as an alien present without having been admitted, inspected, or paroled.  (Doc. 8-1 at 3.) On December 27, 2017, Petitioner was released to the custody of an unrelated sponsor. (*Id.* at 2.) On

January 13, 2018, Petitioner turned eighteen. (Doc. 1 at 2.) On January 1, 2026, Petitioner was detained by immigration officials while at a truck stop in Phoenix, AZ.  (Doc. 8 at 1.)

On February 20, 2026, Petitioner filed the instant Petition, wherein he asserted that his immigration detention violates both substantive and procedural due process. (Doc. 1 at 15–18.) On February 23, 2026, this Court issued an Order to Show Cause requiring Respondents to answer the Petition. (Doc. 6.) On March 2, 2026, Respondents filed their Response. (Doc. 8.) In their Response, Respondents acknowledge that Petitioner received protections under the Trafficking Victims Protection Reauthorization Act (TVPRA) as an UAC before he turned eighteen. (*Id.*) On March 16, Petitioner filed a Reply. (Doc. 9.) Thereafter, on April 30, 2026, Petitioner filed a Motion for a Temporary Restraining Order. (Doc. 10.) On May 7, 2026, Respondents filed a Response to the Motion for a Temporary Restraining Order. (Doc. 11.)

**II.    28 U.S.C. § 2241 WRIT OF HABEAS CORPUS.**

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[1] challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

[1]   Undersigned shall use the term 'noncitizen' unless a quoted statute or court decision uses the term 'alien.' This usage is congruent with the Ninth Circuit Court of Appeals' precedent, such as *Avilez v. Garland*, which specifically stated:

This opinion uses the term noncitizen unless quoting language from the immigration statutes or past opinions containing the term alien. There are two reasons behind this choice. First, use of the term noncitizen has become a common practice of the Supreme Court[.] Second, even if that were not the

- 2 -

Because Petitioner only challenges his immigration detention, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

**III.    DISCUSSION**.

**A. Trafficking Victims Protection Reauthorization Act**.

The crux of this action is whether Petitioner, who has aged out of the TVPRA, is subject to mandatory detention under 8 U.S.C. § 1225(b). Respondents claim that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Doc. 8 at 5.) Respondents' assertion is patently wrong, ignoring both statutory text and precedent from this Court's sister districts.

The TVPRA, which was signed into law on December 23, 2008, provided statutory protections to UACs related to processing and detention. *See Y.A.A. v. LaRose*, No. 3:26-cv-03071-LEK-VET, 2026 U.S. Dist. LEXIS 145213, at *9–10 (S.D. Cal. June 29, 2026). As the Court in *N.B. v. Barr* noted:

> The TVPRA built on the split of duties in the [Homeland Security Act] and further requires that 'the care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate, shall be the responsibility of the Secretary of Health and Human Services [("HHS")].' 8 U.S.C. § 1232(b)(1). It also provides that in most instances, 'any department or agency of the Federal Government that has an unaccompanied alien child in custody shall transfer the custody of such child to the Secretary of Health and Human Services not later than 72 hours after determining that such child is an unaccompanied alien child.' 8 U.S.C. § 1232(b)(3).

case, careful writers avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing. The word alien can suggest "strange," "different," "repugnant," "hostile," and "opposed," . . . while the word noncitizen, which is synonymous, . . . avoids such connotations. Thus, noncitizen seems the better choice.

*Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (cleaned up).

- 3 -

> The TVPRA makes clear that HHS is responsible for all placement decisions for UACs in its custody, and for conducting suitability assessments for those placements. 8 U.S.C. § 1232(c). It requires that UACs in HHS custody be 'promptly placed in the least restrictive setting that is in the best interest of the child,' and it provides guidelines for the reunification of UACs with their families by HHS. 8 U.S.C. § 1232(c)(2), (3).

*N.B. v. Barr*, No. 19-CV-1536 JLS (LL), 2019 U.S. Dist. LEXIS 170547, at *4–5 (S.D. Cal. Oct. 1, 2019) (quoting *B.I.C. v. Asher*, No. C16-132-MJP-JPD, 2016 U.S. Dist. LEXIS 32647, at *5–6 (W.D. Wash. Feb. 19, 2016), *report and recommendation adopted*, No. C16-132-MJP-JPD, 2016 U.S. Dist. LEXIS 32636 (W.D. Wash. Mar. 11, 2016)).

Because UACs are to be placed in the "least restrictive setting that is in the best interest of the child," 8 U.S.C. § 1232(c)(2)(A), "courts have consistently found UACs are not subject to Section 1225(b)'s mandatory detention framework." *Reyes v. Hernandez*, No. 2:26-cv-00633-GJL, 2026 U.S. Dist. LEXIS 63484, at *6 (W.D. Wash. Mar. 25, 2026) (collecting cases). The TVPRA's protections do not disappear when a UAC reaches the age of eighteen. Rather, the statute provides that the Secretary of the DHS "shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). "This requirement of placement in the least restrictive setting is in direct conflict with mandatory detention." *F.S.S.M. v. Wofford*, No. 1:25-cv-01518-TLN-AC, 2025 U.S. Dist. LEXIS 254953, at *12 (E.D. Cal. Dec. 9, 2025). Put differently, petitioners who have 'aged out' of their UAC status under the FVPRA still retain the protections that the TVPRA has provided, including that they may not be subject to mandatory detention under 8 U.S.C. § 1225(b).

Consequently, as both parties agree that Petitioner was protected by the TVPRA before he 'aged out,' he cannot be subject to mandatory detention. For this reason alone, Petitioner is entitled to immediate release from custody.

. . .

. . .

- 4 -

**B. Due Process**.

Even assuming, *arguendo*, that Respondents possessed statutory authority to detain Petitioner, they are still obligated to comply with the Fifth Amendment's Due Process Clause. The Court has little difficulty concluding Petitioner had a protected liberty interest in his release from immigration detention under the TVPRA and was entitled to a pre-deprivation hearing before his arrest and detention. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); *see also F.S.S.M.*, 2025 U.S. Dist. LEXIS 254953, at *14 ("Petitioner has a protected liberty interest based on the government's prior representation that he was released pursuant to the TVPRA and because he spent five years at liberty relying on that representation."); *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO (HC), 2025 U.S. Dist. LEXIS 183995, at *13–14 (E.D. Cal. Sep. 18, 2025) ("For over two-and-a-half years, [petitioner's release under TVPRA] allowed her to live with her family in Howard Lake and establish a life there. She graduated high school in Howard Lake, became lawfully employed in childcare services and at a restaurant, and volunteered at her church. The government's release of petitioner in 2023 reflected a determination that she did not pose a flight risk or danger to the community. . . . The Court finds that petitioner has a protected liberty interest in her release."); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause").

Because Petitioner has a liberty interest in his release, the Court must now determine what procedures are required. To do so, the Court applies the three-part *Mathews v. Eldridge* test. Under the *Mathews* test, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

- 5 -

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."); *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government. 'Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'") (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)); *cf. Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review") (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)). This factor favors Petitioner.

Turning to the second factor, "[w]here an individual has not received a bond or redetermination hearing, the risk of an erroneous deprivation [of liberty] is high." *Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 U.S. Dist. LEXIS 179594, at *33 (N.D. Cal. Sep. 12, 2025) (citation omitted). The Court finds that there is a significant risk of erroneous deprivation if a noncitizen released under the TVPRA may be re-detained without a neutral decisionmaker analyzing whether re-detention is warranted. Consequently, this factor also favors Petitioner.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal.

- 6 -

2019).  Further, detention hearings in immigration courts are commonplace and impose a "minimal cost." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal., 2025); *Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 U.S. Dist. LEXIS 202711, at *21 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."); *cf. Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (noting that "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person"). In any event, "[d]etention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025).  This factor thus also favors Petitioner.

The Court therefore finds that the *Mathews* factors weigh in favor of Petitioner and requires he be immediately released from DHS custody.

Accordingly,

**IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** that Respondents must **IMMEDIATELY RELEASE** Petitioner from custody under the same conditions that existed before his re-detention.

**IT IS FURTHER ORDERED** that Respondents shall provide a Notice of Compliance within **THREE (3) BUSINESS DAYS** of Petitioner's release.

. . . .

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** that any pending motions are denied as moot and the Clerk of Court shall enter judgment in Petitioner's favor and close this case.

Dated this 15th day of July, 2026.

_____
Honorable John J. Tuchi
United States District Judge